KNEELAND *et al.* v. WAYNE CO. NAT. BANK.

No. 2649.   Opinion Filed July 15, 1913.

(134 Pac. 17.)

**COURTS—Adjournment by Sheriff—Repeal of Statutes.** Comp. Laws 1909, sec. 6255 (Rev. Laws 1910, sec. 5338), provides: "If the judge of a court fail to attend at the time and place appointed for holding his court, the sheriff shall have power to adjourn the court, from day to day, until the judge attend. * * * "

Act of March 25, 1910 (Sess. Laws 1910, c. 102), provides: "If the judge of any district court fail to attend at the time and place appointed for convening the regular term of the district court, the sheriff of the county shall have power to adjourn the court, from day to day, until the judge, or the judge assigned, appear. * * *"

At the time and place appointed for holding a special term of the district court, the judge failing to attend, the sheriff adjourned the court, from day to day, until the judge attended, pursuant to section 6255 (5338), **supra.** Held, that the act repealed the section by implication, and curtailed the power of the sheriff, and confined it to adjourning a regular term from day to day, and that the act of the sheriff in adjourning the special term was **coram non judice.**

(Syllabus by the Court.)

Kane, J., dissenting.

*Error from District Court, Alfalfa County;
James W. Steen, Judge.*

Action by the Wayne County National Bank against G. N. Kneeland and others. Judgment for plaintiff, and defendants bring error. Reversed.

*Parker & Simons* and *Garber & Kruse,* for plaintiffs in error.

*A. C. Beeman* and *H. J. Sturgis,* for defendant in error.

TURNER, J.   After issue joined in the district court of Alfalfa county causes Nos. 136, 137, both of which are styled Wayne County National Bank against G. N. Kneeland and others, were, by stipulation, consolidated and tried before one jury as one case, and separate verdicts were returned in each case in

favor of the plaintiff and against the defendants in a sum certain in each case. On November 18, 1910, a motion for a new trial was filed in each case, and the term ended December 3, 1910. On December 6, 1910, James W. Steen, resident judge, at chambers, issued an order calling a special term of the district court within and for the county of Alfalfa, to be held in Cherokee in said county beginning on December 29, 1910. The order directed notice to be given as required by law, which was done pursuant to chapter 102, Sess. Laws 1910, p. 193. On December 29, 1910, the first day of said special term, Judge Steen held court at Fairview, Major county, and neither he nor any other judge was present and presiding in Cherokee on said day, but the sheriff appeared on the morning of that day and adjourned court to the morning of the next day. At that time came Judge Steen, and held court at Cherokee on that day and the next, on which days, among other things, after considering certain affidavits filed in support thereof, over objection, overruled both motions, to which defendants excepted, and bring the same here and urge that the action of the court was *coram non judice.*

Whether it is or not, both sides concede, turns upon the construction of Comp. Laws 1909, section 6255 (Rev. Laws 1910, sec. 5338), and an Act approved March 25, 1910 (Sess. Laws 1910, p. 189). By defendant in error it is contended that the action was not *coram non judice* because, they say, the sheriff had power (Judge Steen failing to attend) on the morning of the 20th to adjourn the court over to the next day, which he did, pursuant to section 6255 (5338), *supra,* which reads:

"If the judge of a court fail to attend at the time and place appointed for holding his court, the sheriff shall have power to adjourn the court, from day to day, until the judge attend or a judge *pro tem.* be selected; but if the judge be not present in his court, nor a judge *pro tem.* be selected, within two days after the first day of the term, then the court shall adjourn for the term. The sheriff shall exercise

the powers and duties conferred and imposed upon him by other provisions of this code, by other statutes and by the common law."

As this section, in effect, undoubtedly provides that, if the judge of any court, whether of a county court, a superior court, or a district court, fail to attend at the time and place of holding his court, either at a regular term or at a special term, the sheriff may adjourn the court from day to day until he attend, the point is well taken unless affected by some other act. But along came another act (March 25, 1910, *supra*), entitled:

"An act to provide for the time of convening the district court in each county in the several district court judicial districts of the state; and making provision for adjourning the same; and declaring an emergency."

The material part of it reads:

"Section 1. The time of convening the regular terms of the district court in each county in the several district court judicial districts of the state shall be on the first Monday in each of the respective months hereinafter set out in this section after each of the respective counties, to wit: * * *

"District Number Twenty. In Alfalfa county in March and November. * * *

"The regular term of any district court may be adjourned from time to time, or *sine die,* by a resident judge of the district court or by any other district judge assigned and holding court in such district, but such adjournment shall be a time prior to the convening of the next regular term.

"The regular judge, or any· judge assigned, may make all orders with reference to the adjournment of the term.

"Special terms of the district court in any county in a district may be called by the resident judge of said district, by order entered of record in such court, notice of such special term to be given in at least two consecutive issues of a weekly newspaper published and of general circulation in such county, prior to the convening of such special term.

"If the judge of any district court fail to attend at the time and place appointed for convening the regular term of the district court, the sheriff of the county shall have power to adjourn the court, from day to day, until the judge, or

the judge assigned, appear, as provided by law; or a judge *pro tem.* be selected, but if the judge be not present in his court, or judge assigned or judge *pro tem.* be not selected within two days after the first day of the term, then the court shall stand adjourned for the term."

And which, by plaintiffs in error, it is contended, provides a complete law regulating terms of the district court, both regular and special, and the manner in which regular terms may be kept alive for two days after the first day fixed for the term, and hence repealed section 6255 (5338) by substitution.

While the later act contains no repealing clause, and on that account, and in view of the rule that repeals by implication are not favored, it is but reasonable to presume at the outset that no repeal by the later of the former act was intended. But, when we indulge the further presumption that, where the Legislature passed the later act, it had the former act before it and, at a glance it can be seen, followed closely its language, we are constrained to believe, in view of what follows, that the legislative intent was that the later should repeal the former. As the former act provides that "if a judge of a court fails to attend at the time and place appointed for holding his court," be the same a regular or a special term, "the sheriff shall have power to adjourn the court from day to day until the judge attend," etc., and the later curtails the power of the sheriff, and confines it to adjourning a regular term only from day to day; and, as both acts contain the same grant of power to him with respect to the district court meeting in regular term, we must hold that the later repeals the former, or give to the later no effect at all, and thereby convict the Legislature of doing a vain thing in passing the later act. In other words, the later act, in granting to the sheriff power to adjourn from day to day a regular term only, when the former act granted him the power to adjourn from day to day both a regular and a special term, granted to him part of a power already pos-

sessed, and thereby implied, by failing to include it, that his former power to adjourn the special term was excluded, and that to so adjourn a regular term was all the power he was intended to exercise. When this condition exists the later act repeals the former. I Lewis' Sutherland, Stat. Con., sec. 250 says:

"Where a later act grants to an officer or tribunal a part of a larger power already possessed, and in terms which, interpreted by themselves, import a grant of all the power the grantee is intended to exercise, it repeals the prior act from which the larger power had been derived. By a statute of Kentucky of 1799 the county courts had power to appoint county jailers to serve their pleasure. In 1802 a provision was inserted in an act to amend the penal laws, 'that the several county courts respectively shall have full power to remove the keepers of the county jails whenever it shall appear to them that such jailers have been guilty of neglect of duty.' This was held to repeal the prior statute."

The case where this was held is *Gorham v. Luckett*, 6 B. Mon. (Ky.) 146. The opinion was by Marshall, J., who, after stating the inquiry to be "* * * whether there is in the twentieth section of the Act of 1802 any sufficient indication of the legislative will or intention that thenceforth the office of jailer should not be held at the mere pleasure of the county court, but should only be subject to forfeiture by neglect of duty, * * *" in a masterly discussion of the question said:

"But supposing, as we must do, that the legislators of 1802 understood well the pre-existing law on the subject, to which this twentieth section relates; that they knew that the county court had already the power of removing the jailer, not only for breach of duty, but for any other cause, and without cause and without question—then the inquiry comes, for what purpose and with what intent do these legislators introduce into this act for amending the penal laws a section which professes to make a formal and substantial grant of power, which, construed by its own terms, would be universally understood as granting a new power, and therefore as expressing the whole power which it was intended that the grantee should have?

Why make an express grant of a part of the power, if, under-standing that the whole power, including this part, was already vested in the court, it was intended that the whole power, including this part, should still remain? If the proviso of the Act of 1799 · remained in force after the enactment of the twentieth section of the Act of 1802, then it is absolutely certain that so much of that section as relates to the removal of county jailers was utterly without effect, and might just as well have been out of the statute. And the same is true if any part of the pre-existing power beyond that which is expressed in this twentieth section continued to exist after its enactment. For to the extent that the power is expressed in this section, it already existed, and would have continued to exist without any new grant, and the new grant can have no · effect whatever, unless it have the effect of restricting the pre-existing powers, by bringing it down to the measure of the new grant. Can we then say that the Legislature did not intend this section to have any effect, and virtually expunge it from the statute? Or must we not allow to it the only effect which it can possibly have, by understanding it to be what, if construed exclusively with reference to its own terms it must be understood to be, a substantial grant of power, expressing all the power the grantee was intended to have, and withholding or resuming whatever beyond this had been formerly granted? * * * The section must have been introduced deliberately, designedly, and to effect some particular purpose. Are we at liberty to say that it should have no effect whatever? This is not a case of the re-enactment of a former law in the same words, or with additional provisions, nor of a regrant of a pre-existing power to the same or a greater extent. It is not a case of cumulative or additional power or right or remedy. Nor does it come within the rule that a subsequent affirmative statute does not repeal a previous one, which can only apply where both statutes can have effect. This is a formal and express grant of limited power to a depository which already had unlimited power. And it can have no effect, nor be ascribed to any other purpose, but that of limiting the extent of the pre-existing power. * * * And if the last act professes, or manifestly intends to regulate the whole subject to which it relates, it necessarily supersedes and repeals all former acts, so far as it differs from them in its prescriptions. The great object, then, is to ascertain the true interpretation of the last act. * * * Since, then,

the twentieth section of the Act of 1802, interpreted according to its own terms, imports a substantial grant of power, and of all the power that the county courts were intended to have on the subject, and since it would be useless and without effect unless thus understood as regulating the whole subject of the removal of jailers by the county courts, we feel bound to give to it this interpretation; and therefore to conclude that after that act took effect the county courts had no other power of removing jailers but that which the twentieth section confers, or removing them whenever it shall appear to the court that such jailers have been guilty of a neglect of duty. If this twentieth section had been the first and only enactment on the subject, all must have concurred in the conclusion that it was intended to regulate the whole subject, and that it granted all the power which the court was intended to have. The difficulty, or rather the embarrassment, in the case arises from the fact that a previous law had given to the same grantee unlimited power on the same subject, and that this twentieth section makes no express words of restriction or change, but, granting an express and limited power, is framed as if it were the first and only act on the subject. But do not these circumstances indicate that it is to be construed as if it were the only act on the subject? Or shall the first act, which is inferior in authority so far as they conflict, so far affect the construction of the last as to deprive it of all effect? We say the last act must have effect according to its terms and its obvious intent. And as both cannot have full operation according to their terms and intent, the first and not the last act must yield. If it could be supposed to have been a matter of doubt whether under the Act of 1799 the county court had power to remove the jailers for neglect of duty, or if any motive could be assigned for introducing a separate section, expressly granting this power, except the purpose of expressing the whole power which the courts were to have, then the basis of the construction which we have assumed would be greatly weakened, if not destroyed. But we do not perceive that any other plausible motive can be assigned. And as, notwithstanding the Act of 1799, it was entirely within the legislative power to withdraw, restrict, or modify the power of removal thereby given to the county courts, and the courts has no right of resistance or refusal, we regard the subsequent grant of a more limited power, advisedly and formally

made, as implying the resumption of the old grant, and a restriction of the power according to the terms of the new one, as by the acceptance of a new lease during a subsisting term, the rights of the tenant are governed by the terms of the new grant."

And so we say that, as to give the former act full force and effect according to its terms would result in expunging the later act from the statutes, and rendering its enactment a vain thing, and as both cannot, and the legislative intent was that both should not stand, the former and not the later must yield.

In line with this repeal by implication is *Curtis v. Gill et al.*, 34 Conn. 49. In that case the Act of 1866 provided that whenever a judgment rendered by a justice of the peace shall exceed $5, an appeal shall be allowed. The appeal was from a judgment rendered for less than that amount. Appellant contended that the statute simply allowed an appeal when the judgment exceeded $5, but did not even by implication, repeal the old law, which allowed an appeal in all cases where judgment was for less than that amount. But the court held otherwise, and that the later statute by implication repealed the pre-existing statute, which allowed appeals in all cases. See, also, *Parrott v. Stevens,* 37 Conn. 93; *Werner v. Phelps,* 36 Conn. 357; *Swann, Auditor, v. Buck,* 40 Miss. 268; *Gibbons et al. v. Brittenum et al.,* 56 Miss. 232.

We are therefore of opinion that the former act was repealed by the later; that the sheriff was without authority to adjourn the term as he did, and that as the same had lapsed at the time the motion for a new trial was passed upon, the action of the court was *coram non judice* and void. Reversed.

HAYES, C. J., and WILLIAMS, J., concur; DUNN, J., absent and not participating; KANE, J., dissenting.