[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Herbert V. Camp, Jr., appeals, pursuant to General Statutes § 8-8, from a decision of the defendant, the Planning and Zoning Commission of the Town of Bethel (Commission), that modified and approved the subdivision application of Camp.
Camp commenced this appeal by service of process on December 23, 1994, against the Commission. Camp alleges that the Commission's action in modifying his subdivision application was illegal, arbitrary and in abuse of its discretion.
Camp owns property located at Topstone Drive and Greenwood Drive in Bethel. Exhibit A: July 14, 1978 deed to property. The property contains three residences, and is located in an R-10 zone which has a minimum lot size of 10,000 square feet and a minimum frontage requirement of 80 feet. Complaint ¶ 2. On August 17, 1994, Camp filed a five lot subdivision application with the Commission, and subsequently supplemented his application with the required documentation, including a subdivision map. [Return of Record [ROR], Item 1: August 16, 1994 application; ROR, Item 3: Subdivision Application Form § 95-4 (indicating items submitted)].
The subdivision map identifies the five lots as lot 1, lot 1A, lot 2, lot 2A and lot 2B. [ROR, Item 4: August 15, 1994 subdivision map]. Camp alleges in his complaint, and the Commission does not contest in its brief, that "Lots 1A, 2A and 2B as shown on the proposed subdivision map each contain a residence with frontage on Greenwood Avenue, and comply with the minimum lot size requirement in the zoning regulations of 10,000 square feet. Those parcels were separate lots in Bethel prior to the enactment of zoning regulations, and have the status of nonconforming uses as to their width and shape . . . ." Complaint ¶ 5; Camp v. Planning and Zoning Commission, Superior Court, judicial district of Danbury, Docket no. 27 29 12, at 1-2 (April 12, 1982, Lavery, J.). Proposed lot 1 is vacant and has an area CT Page 11788 of 10,138 square feet with 80.74 feet of frontage on Topstone Drive. [ROR, Item 4]. The Commission does not contend that lot 1 as shown on the map violates any regulations. Proposed lot 2 has an area of 23,399 square feet and a passway to Topstone Drive with only 20.18 feet of frontage. [ROR, Item 4]. Proposed lot 2 does not, on its face, comply with the zoning regulations which require 80 feet of frontage. Bethel Code § 118-24F. It is this noncompliance that concerned the Commission.
On December 8, 1978, however, the Bethel Zoning Board of Appeals (Board) granted a variance, reducing the frontage requirement of proposed lot 2 "from 80' to 20.18' on Topstone Drive to allow access to the rear lot. The variance becomes effective at such time it is filed in the land records with the Town Clerk." [ROR, Item 6: December 8, 1978 notice of variance approval]. The granting of the variance was never appealed and was properly recorded on December 14, 1978. [Certified Copy of December 8, 1978 variance].
In 1979, subsequent to the granting of the variance, Camp applied for a six lot subdivision of the property. Camp v.Planning and Zoning Commission, supra, 1. The Commission determined that the Board had improperly granted the frontage variance and therefore, the Commission refused to honor the 20.18 foot recorded variance. Id., 5-8. The Commission modified Camp's application and thereafter approved it, reducing the number of lots from six to five. Id., 3. Camp appealed to the Superior Court from the Commission's modified approval of the subdivision application. The action was not an appeal from the independent granting of the variance by the Board. Id. In its memorandum of decision, the court, Lavery, J., wrote that "[t]he key issue is whether the Bethel Zoning Board of Appeals had the power to grant the variance to reduce the frontage on the third new lot to 20 feet more or less and in effect create an interior lot and bind the defendant Commission in its consideration of the plaintiff's application. The answer is no." Id., 5. As a result, the court dismissed Camp's appeal, thereby sustaining the Commission's modified approval of the application. Id. Thereafter, Camp never constructed the subdivision and the approval expired as a matter of law. See General Statutes § 8-26c(c) (construction must be completed within five years from the granting of subdivision approval or the approval expires).
In deciding Camp's present application, the Commission was concerned about the effect of Judge Lavery's decision on the CT Page 11789 variance so they solicited the opinion of their counsel, Attorney Gallagher, as to the viability of the variance. [ROR, Item 21: November 3, 1994 letter from Commission to Attorney Gallagher]. On November 21, 1994, Attorney Gallagher responded, opining that "[s]ince no appeal was taken from the granting of the variance, his decision could not overturn it . . . ." [ROR, Item 25: November 21, 1994 letter from Attorney Gallagher to Commission]. He further opined that "[i]f there is an application before the commission containing the lot as allowed by the variance, I do not believe the commission can deny the subdivision because the lot does not meet zoning regulations because the terms of the variance in effect become the zoning regulations for that lot." [ROR, Item 25].
On December 13, 1994, after receiving the opinion letter from Attorney Gallagher and after several continuances, the Commission convened to hear and decide Camp's subdivision application. [ROR, Item 37, p. 2: Minutes for December 13, 1994 Commission meeting]. The Commission discussed Judge Lavery's decision and reviewed the materials filed by Camp, including a letter from his attorney. [ROR, Item 37, p. 2]. The Commission unanimously decided to approve the application with a modification. [ROR, Item 37, p. 2]. The modification was that lots 1 and 2 would be combined with a net result of a four lot subdivision being approved rather than a five lot subdivision. [ROR, Item 37, p. 2]. The reason given for the approval was that, as modified, the subdivision "meets our zoning regulations and does not create an interior lot in violation of our zoning regulations." [ROR, Item 37, p. 2]. On December 15, 1994, Camp's attorney received a notice from the Commission that the application had been approved as modified. [ROR, Item 28: December 15, 1994 letter from Commission to Attorney Tuozzolo]. The only reason given by the Commission for the modification was that the 20.18 feet of frontage does not comply with the zoning regulations since it creates an illegal interior lot. [ROR, Item 37, p. 2; Item 28]. There was no mention made in the decision of the effect of the variance. [ROR, Item 37, p. 2; Item 28]. The notice of decision was printed in TheBethel Home News on December 19, 1994. [ROR, Item 29: Certificate of Publication]. Thereafter, on December 23, 1994, this appeal was commenced by service of process on the Commission and the Bethel Town Clerk.
On March 14, 1995, Camp filed his brief. Therein he argues that the Commission's decision to disregard the variance and render a modified approval was arbitrary, illegal and contrary to CT Page 11790 law. Further, he argues that since the only reason offered for the modification was that the application did not conform to the zoning regulations, despite the existence of the variance, the court is required to determine the appeal based solely on the one ground for modification proffered by the Commission. On July 10, 1995, Camp filed a reply brief in further support of his appeal.
On April 17, 1995, the Commission filed a brief arguing the validity of the variance as applied to this property was res judicata based on Judge Lavery's 1982 decision. As a result, the Commission argued that its decision should be affirmed.
JURISDICTION
A. Aggrievement
The court found at the hearing on this matter that Camp, as owner of the property both at the time of the application and at the time of the present appeal, was aggrieved by the Commission's modification of his application. See Winchester Woods Associatesv. Planning Zoning Commission, 219 Conn. 303, 308, 592 A.2d 953
(1991) (the owner of the property subject to an application filed with an agency is aggrieved).
B. Timeliness and Notification
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created the right.Simko v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). Where an appeal is filed after the statutory appeal period has expired, the trial court lacks subject matter jurisdiction over the appeal and must dismiss the case. UpjohnCo. v. Zoning Board of Appeals, 224 Conn. 96, 102, 616 A.2d 793
(1992). Further, compliance with statutory notice provisions is a prerequisite to a valid administrative action and the failure to give notice as required by statute is a jurisdictional defect rendering the Board's decision void. Wright v. Zoning Board ofAppeals, 174 Conn. 488, 491, 391 A.2d 146 (1978).
Camp's appeal from the Commission to this court is controlled by General Statutes § 8-8. Section 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service CT Page 11791 of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes. The appeal shall be returned to court in the same manner and within the same period of time as prescribed for civil actions brought to that court."
Camp commenced this appeal by service of process on December 23, 1994, four days after the Commission's decision was published in The Bethel Home News on December 19, 1994.
Therefore, that the court finds that Camp's appeal to this court was timely.
STANDARD OF REVIEW
The burden of proof to demonstrate that the Commission acted improperly is upon Camp. Gorman Construction Co. v. Planning Zoning Commission, 35 Conn. App. 191, 195, 644 A.2d 964 (1994). "In exercising its function in approving or disapproving a subdivision plan, a planning commission acts in an administrative capacity. Westport v. Norwalk, 167 Conn. 151, 155, 355 A.2d 25
(1974); RK Development Corp. v. Norwalk, 156 Conn. 369, 375,242 A.2d 781 (1968); Forest Construction Co. v. Planning ZoningCommission, 155 Conn. 669, 674, 236 A.2d 917 (1967). In passing on a subdivision application, a commission is controlled by the regulations that it has previously adopted. Westport v. Norwalk, supra, 167 Conn. 155, 157, North Rollingwood Property OwnersAssn. v. City Plan Commission, 152 Conn. 518, 521, 209 A.2d 177
(1965); Langbein v. Planning Board, 145 Conn. 674, 679,146 A.2d 412 (1958); Beach v. Planning Zoning Commission, 141 Conn. 79,83, 103 A.2d 814 (1954)." Lombardo v. Planning ZoningCommission, 43 Conn. Sup. 508, 513-14, ___ A.2d ___ (1994), aff'd and opinion adopted, 38 Conn. App. 812, 815, ___ A.2d ___ (1995). If the application complies with the applicable regulations the Commission must approve the plan. Weatherly v. Town Planning Zoning Commission, 23 Conn. App. 115, 119, 579 A.2d 94 (1990).
In reviewing the Commission's actions the court must determine whether the record reasonably supports the conclusions it reached. Property Group, Inc. v. Planning Zoning Commission,226 Conn. 684, 697, 628 A.2d 1277 (1993). Where the Commission has stated the reasons for its decision, the court is not at liberty to probe beyond them. DeMaria v. Planning ZoningCommission, 159 Conn. 534, 541, 271 A.2d 105 (1970); Central Bankfor Savings v. Planning and Zoning Commission, 13 Conn. App. 448, CT Page 11792 457, 537 A.2d 510 (1988). In applying the law to the facts of a particular case, the Commission is endowed with liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary, or illegal. GormanConstruction Co. v. Planning Zoning Commission, supra, 35 Conn. App. 195. Further, the court "may not substitute its judgment for that of the zoning commission and must not disturb decisions of local commissions as long as honest judgment has been reasonably and fairly exercised. Whittaker v. Zoning Board of Appeals,179 Conn. 650, 654, 427 A.2d 1346 (1980); Molic v. Zoning Board ofAppeals, 18 Conn. App. 159, 164, 556 A.2d 1049 (1989)." Id., 195-96.
The interpretation of the Town's regulations, however, is "a question of law for the court. Robinson v. Unemployment SecurityBoard of Review, 181 Conn. 1, 6, 434 A.2d 293 (1980); Pascale v.Board of Zoning Appeals, 150 Conn. 113, 116-17, 186 A.2d 377
(1962). The court is not bound by the legal interpretation of the ordinance by the town. See Schwartz v. Planning ZoningCommission, 208 Conn. 146, 152-53, 543 A.2d 1339 (1988)."Wasilewski v. Planning Zoning Commission, Superior Court, judicial district of New Haven, Docket No. 31 97 71 (April 15, 1992, Axelrod, J.). Therefore, the court must conduct a de novo review of the Commission's interpretation of its regulations.
MERITS OF THE APPEAL
In the present case, the Commission determined that Camp's application did not conform to the lot size regulations, Bethel Code § 118-24F, and, therefore, it denied his application for a five lot subdivision. Thereafter, it modified the application and approved a four lot subdivision. The reason given for the modification was that the application would conform to the minimum Bethel frontage requirement set forth in the regulations. [ROR, Item 37, p. 2; Item 28].
The regulations that are pertinent to the present appeal require a minimum lot size in an R-10 residential zone of 10,000 square feet. Bethel Code § 118-24F. In addition, the regulations require that the lot have street frontage of at least 80 feet. Bethel Code § 118-24F. Camp's application contained four lots that fit the area and frontage requirements and one lot that did not, identified as lot 2. Lot 2 is in excess of 10,000 square feet in area but has only 20.18 feet of frontage on Topstone Drive. Lot 2, however, is subject to a 1978 variance CT Page 11793 that reduced the 80 foot requirement to a 20.18 foot requirement. The variance was recorded and never appealed from.
A variance runs with the land. General Statutes § 8-6(b) ("Any variance granted by a zoning board of appeals shall run with the land and shall not be personal in nature to the person who applied for and received the variance."); see also Fromer v.Two Hundred Post Associates, 32 Conn. App. 799, 804, 631 A.2d 347
(1993) ("By its very definition, a variance is granted with respect to a particular piece of property; it can be enjoyed not only by the present owner but by all subsequent owners."). A variance allows the applicant to "use his property in a manner prohibited by the regulations." Talarico v. Conkling, 168 Conn. 194,198, 362 A.2d 862 (1975). Where a variance is not appealed, "the variance has become final, runs with the land, and passes to subsequent owners." Heritage House v. Charles Street, Superior Court, judicial district of New Haven, Docket no. 36 05 61 (February 6, 1995, Booth, J.). Where the Board has granted a variance as to minimum frontage requirements, the Commission's duty "is to ensure compliance with those remaining [unvaried] requirements" of the regulations. Chatlos v. Planning and ZoningCommission, 1 CSCR 58, 59 (January 22, 1986, Jacobson, J.).
In the present case, the return of record indicates that the only imperfection in the application was the fact that the frontage requirement was not met. The Commission has not argued that the application was incomplete or insufficient in any other fashion. The 1978 unappealed variance, however, effectively changed the regulation from 80 feet to 20.18 feet for this particular piece of property.[1] As a result, the court finds that the Commission was required to find that the varied regulations demand only 20.18 feet of frontage as to lot 2 not the 80 feet contemplated in the regulations. Since this was the only ground offered by the Commission in support of its modification of the application, and the application conformed to the regulations in all other respects, the Commission's decision was in error and must be reversed. DeMaria v. Planning ZoningCommission, supra, 159 Conn. 541 (where the application conforms to the regulations it must be approved); Central Bank for Savingsv. Planning and Zoning Commission, supra, 13 Conn. App. 457
(same).
Accordingly, the appeal is sustained and the Commission is ordered to approve Camp's five lot subdivision application. CT Page 11794
MORTON I. RIEFBERG JUDGE OF THE SUPERIOR COURT