[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs (McLachlans) appeal from a decision of the Town of Newtown Planning and Zoning Commission (Commission) denying their CT Page 8962 application for a re-subdivision of an approximately sixteen and a half acre plot they own in Newtown situated south of Hall Lane and between Hanover Road and The Boulevard.
 Statement of Facts
The land in question has been owned by the McLachlan family for some period of time. Originally, it was part of a larger parcel of land which has been subdivided twice previously, and it is now designated as lot 4 of the most recent (1989) subdivision. The land is located in a residential zone of the Borough of Newtown requiring one acre lot size and 150 feet road frontage. The Commission considers and determines applications for subdivisions in the Borough of Newtown.
The proposed subdivision would consist of nine lots, two of which front on The Boulevard, one with frontage on both Hanover Road and Hall Lane and six with frontage only on Hanover Road. Hall Lane inns roughly east-west between the Boulevard and Hanover Road which are generally north-south roads.
The proposal received inland wetlands approval in 1999. (Return of Record [ROR] Item 14.) It came before the Commission for a public hearing on April 20, 2000. On June 15, 2000 the Commission denied the application; the resolution of disapproval stated:
 1. The submitted plans do not adequately verify that an 80 ft. minimum right of way for Hanover Road which is a major collector street pursuant to Figure 12 of the Newtown Plan of Conservation and Development and the Newtown Road Ordinance is available nor do the plans adequately verify that there is a least 25 feet of right of way from the centerline of the existing street right of ways on Hall Lane or The Boulevard. There does not appear to be adequate width provided for Hall Lane at Lot 9. Section 4.02.120 of the Subdivision Regulations has not been satisfied.
 2. The re-subdivision application is proposing to extend an existing drain which outlets onto property at lots 5 and 6. The extent of work necessary to accomplish such work triggers the need for a road work agreement to be entered into the Town pursuant to the Newtown Road Ordinance. In addition, there are existing guide rails along Hanover Road that will be removed in order to CT Page 8963 construct the driveways for lots 6, 7 and 8 and possibly 9 and there is extensive regrading proposed on lots 3, 4 and 5 that may create the need for more guide rails along Hanover Road. The combination of these factors cause questions as to the impact this proposal will have no public safety. No road work agreement has been submitted by the applicant pursuant to the Newtown Road Ordinance and the full extent of the impact the re-subdivision will have on Hanover Road and public safety has not been adequately addressed by the applicant. Sections 2.03 and 4.02.200 of the Subdivision Regulations are not satisfied.
 3. An ordinance which applies to all trees that partially or completely encroach upon the public right of way is in effect in the Borough of Newtown. The applicant has not adequately addressed the impact such ordinance will or will not have on the proposed development of these lots and whether or not such requirements of the ordinance will create a risk for public safety.
(ROR, Item 5.)
The decision was published in the Newtown Bee on June 23, 2000. (ROR, Item 9.) This appeal was served on June 27, 2000.
 Aggrievement
The plaintiffs have pleaded they are owners of the property which they seek to subdivide. The first-named plaintiff, J. Richard McLachlan, gave unrebutted testimony to substantiate this fact. The court finds that the plaintiffs are aggrieved. See Winchester Woods Associates v. Planning andZoning Commission, 219 Conn. 303, 308 (1991). Since the appeal was served in a timely fashion, this court has jurisdiction.
 Standard of Review on Appeal
The Commission, in determining to disapprove the McLachlans application, was acting in its administrative capacity. Reed v. Planningand Zoning Commission, 208 Conn. 431 (1988). In performing this function the Commission is limited to determining whether the subdivision application before it meets and complies with the pertinent local subdivision regulates. Id; R.B. Kent Sons, Inc. v. Planning and ZoningCommission, 21 Conn. App. 370 (1990). Where the Commission states its CT Page 8964 reasons for denying an application, if one of those reasons is valid and supported by substantial evidence in the record, the Commission's determination should be upheld. Property Group, Inc. v. Planning andZoning Commission, 226 Conn. 684 (1993). The question presented on this appeal is whether any of the Commission's expressed reasons for denial are supported by substantial evidence. Westport v. Norwalk, 167 Conn. 151
(1974). With the foregoing in mind, the court will consider the Commission's resolution of disapproval in light of the record evidence.
 Discussion
A. Road Rights of Way. In its first reason for denying the subdivision application the Commission stated that (1) there was no provision for an eighty foot right of way on Hanover Road, and (2) there was no verification of a twenty five foot right of way from the center line of The Boulevard or Hall Lane. The resolution of disapproval stated that subdivision regulation § 4.02.120 was not satisfied. The basis for asserting that the application should have provided for an eighty foot right of way on Hanover Road is asserted to be that Hanover is designated a major "collector" road in the Newtown Plan of Conservation and Development (ROR, Item 36) and the Newtown Road Ordinance establishes, as a "design standard", an eighty foot right of way for such roads (ROR, Item 51, p. 1.) However, this contention is not sufficient to establish that a subdivision application is required to provide such an extensive right of way. If the road ordinance design standard was an absolute requirement then it would, or should, have been enforced long before this second re-subdivision application was filed. Furthermore, our Supreme Court has held that local development plans are "merely advisory,"Lathrop v. Planning Zoning Commission, 164 Conn. 215, 223 (1973), and denying a subdivision on the ground it does not comply with a town plan is incorrect. Smith v. Zoning Board of Appeals, 227 Conn. 71 (1993), cert. denied, 510 U.S. 1164 (1994).
The Commission further argues that the Newtown subdivision regulation § 4.01.500 (ROR, Item 50) requires that where a proposed street might carry other than neighborhood traffic the Commission may require a right of way greater than fifty feet in width. This argument is unpersuasive. Section 4.01.500 only applies to "proposed" streets, and indeed it appears that the road ordinance's "design standard" may only apply to "proposed" streets as well. (ROR, Item 51, §§ 2.07.1.1-2.07.1.4). Hanover Road is an existing road outside the subdivision, not a proposed road. Indeed, reading § 4.01.500 (proposed streets) and § 4.02.120 (existing streets) together is strong evidence of the lack of authority by the commission to require more than a fifty foot right of way on existing streets as a condition of a subdivision. The court therefore finds that the eighty foot requirement is not a valid CT Page 8965 requirement for a subdivision application and is not set forth in the subdivision regulations.
The second part of the first stated reason for denial is the failure of the McLachlans to "verify" a twenty-five foot right of way on Hall Lane and The Boulevard. The basis for the reason is Section 4.02.120 of the Newtown Subdivision Regulations. (ROR, Item 50.) That regulation requires, for a subdivision approval, a street right of way of at least twenty-five feet measured at right angles from the center of an existing street. The possibility that such a right of way was not present along Hall Lane and Hanover Road was raised by the Town Engineer and the Director of Community Development. (ROR, Items 33, 36). The Town Engineer, however, noted the possibility that the right of way had been granted in 1989 when the land was previously subdivided. In fact, that seems to have been the case. The prior subdivision plan on file shows a .37 acre parcel "y" designated to be deeded to the Town along Hanover Road and Hall Lane. The parcel, is shown, albeit not clearly, on the copies of the prior subdivision map in the Record (ROR, Items 42, 45). It is also shown, with greater clarity on a larger version of the map marked as Exhibit A at the argument of this appeal. Parcel "y" as depicted in the 1989 subdivision map shows that the twenty-five foot right of way along Hall Lane and Hanover Road is in existence. Moreover, there is a deed on file for the .37 acre parcel "y" which appears in the Record. (ROR, Item 43)[1]. These facts were pointed out to the Commission at the hearing. (ROR, Item 1 ["Tr"] 2-3). As to The Boulevard, the same subdivision maps show that the McLachlan property is 30 feet or more from the center line, and therefore, no right of way is required. Based on the foregoing, the court finds there is no substantial evidence to support the first paragraph of the Commission's resolution of disapproval.
B. Roadwork Agreement and Public Safety Concerns. The second reason articulated by the Commission for denying the McLachlan application states in full:
 2. The re-subdivision application is proposing to extend an existing drain which outlets onto the property at lots 5 and 6. The extent of work necessary to accomplish such work triggers the need for a road work agreement to be entered into the Town pursuant to the Newtown Road Ordinance. In addition, there are existing guide rails along Hanover Road that will be removed in order to construct the driveways for lots 6, 7 and 8 and possibly 9 and there is extensive regrading proposed on lots 3, 4, and 5 that may create the need for more guide rails along Hanover Road. The CT Page 8966 combination of these factors cause questions as to the impact this proposal will have on public safety. No road work agreement has been submitted by the applicant pursuant to the Newtown Road Ordinance and the full extent of the impact the re-subdivision will have on Hanover Road and public safety has not been adequately addressed by the applicant. Sections 2.03 and 4.02.200 of the Subdivision Regulations are not satisfied.
(ROR, Item 5.)
In the above paragraph the Commission has set forth an amalgam of points which need to considered separately and as a whole. The first two sentences deal with a designed drainage outlet on the proposed lots five and six which front on Hanover Road and is located almost directly across from the intersection with Sunset Hill Road. The Commission asserts that the drainage project requires a "road work agreement" with the Town of Newtown pursuant to § 4.02.200 of the subdivision regulations.[2]
As the court understands it, a road work agreement is an undertaking by the applicant to make improvements on adjacent town owned property at nominal cost to the town. (See ROR Item 50, subdivision reg. 4.02.200.) The basis for the Commission's position appears to be the report of Town Engineer Richard Bolmer (ROR, Item 33) noting that the extent of the drainage work requires such an agreement.
The plaintiffs challenge this portion of the Commission's disapproval on three interrelated grounds. First, they contest whether the road work agreement procedure is applicable; second, they point out that the procedure under the subdivision regulations for providing a bond to assure the work is completed satisfactorily is the more appropriate manner in which to proceed and they have provided all the necessary information for that procedure to operate, and third, given the genuine uncertainty as to the appropriate procedure the Commission, if it insisted on a road work agreement, acted arbitrarily by closing the hearing without providing an opportunity for the plaintiffs to obtain one.
The court agrees with the plaintiffs' position. While regulation 4.02.200[3] permits the Commission to reject a subdivision application under certain circumstances, the regulation deals with situations where a proposed subdivision would require unreasonably large expenditures to improve existing roads in order to serve vehicular and pedestrian traffic generated by the proposed subdivision. The drainage project, the vast majority of which takes place on the applicants' land, does not involve improvements to serve vehicular or pedestrian traffic. It serves only to control existing water runoff. There was, therefore, ample reason for the CT Page 8967 plaintiffs to conclude no road agreement would be required for the drainage project work and that the giving of a bond to assure the completion of the work would meet the regulation requirements. The plaintiffs, in fact did provide all the information necessary to establish the amount of any required bond. This information was in the hands of the Commission many months before the hearing. (ROR, Item 17.) The court finds there is no basis in the subdivision regulations to require the applicant to enter into a road work agreement for the drainage project.
The court now turns to the second section of paragraph two of the resolution of disapproval in which questions and concerns about "public safety" are expressed. This portion of the resolution and paragraph three thereof mention the issue of safety three times.[4] The Commission's second reason refers to "guide rails along Hanover Road." First, the Commission noted that certain existing guide rails will need to be removed to build driveways for as many as four of the lots fronting on Hanover Road. Second, it noted that additional guide rails "may" be needed along Hanover Road because of the proposed regrading in subdivision plan. The Commission concludes that "[t]he combination of those factors cause questions as to the impact the proposal will have on public safety." (ROR, Item 5.)
At the outset, as noted by counsel for the McLachlans, and by the court during its site visit, a significant portion of the existing guide rails along the approximately quarter mile section of Hanover Road which borders the proposed subdivision are in disrepair. These guide rail sections would not function as a deterrent to a vehicle going off the road. Other portions of this stretch of road do not have guide rails at all. Turning to the reason relied on by the Commission the court finds no evidence in the record to support the conclusion that either new guide rails are required by proposed excavating or that any matters relating to guide rails raises a safety issue. Neither the Town Engineer, nor anyone else, presented any information or facts about what effect, if any, proposed excavation in the subdivision would have. Indeed, the only evidence on the subject was that the proposed excavation work was in conformance with subdivision regulations. (ROR. Item 19.) Further, any changes in the guide rails caused by driveway openings, such as tie downs, would appear to be a matter taken up at the time the driveways are constructed. This, in fact, appears to be the position of the Town Engineer. (ROR, Item 33.)
The final portion of the Commission's second reason states that no road work agreement has been submitted "and the full extent of the impact the re-subdivision will have on Hanover Road and public safety have not been adequately addressed by the applicant" The Commission adds that subdivision regulations §§ 2.03 and 4.02.200 have not been satisfied. CT Page 8968 (ROR, Item 5.)
While the court must be sensitive to public safety issues, the Commission has the responsibility to delineate these issues far more clearly than it has here. The references in paragraph two to unidentified "concerns" about safety, and unspecified "impact[s]" which have not been "adequately addressed" are not helpful in that they do not set forth an ascertainable reason for rejecting the application.
The court has nevertheless carefully scrutinized the record on appeal to review all the evidence pertaining to issues of safety. The, Town Engineer of Newtown submitted a three page memorandum to the Commission offering comments on the proposed subdivision (ROR, Item 33.) The only statement remotely pertinent to the issues of public safety is the above mentioned reference that in order to construct a driveway into one of the lots fronting on Hanover Lane a part of the "guide rail" would have to be removed and "proper end treatments" provided.
The Borough of Newtown Zoning Commission submitted a letter (ROR, Item 34) noting that increased traffic on Hanover Road, generated by the subdivision would create "a risk for public safety." Specifically, the letter commented "the curves and drops in the road's surface on Hanover Road make it difficult.
 . . . for individuals entering or exiting the driveways from the proposed lots to see oncoming traffic as well as drivers on Hanover Road will have difficulty seeing (at an acceptable distance ahead of them) individuals trying to enter onto Hanover Road . . .
The Borough Commission's letter also mentioned a safety concern relating to entering or exiting the driveway from one of the lots fronting on The Boulevard. Furthermore, Elizabeth Stocker, Director of the Newtown Community Development office submitted a memorandum which noted that on Hanover Road "care must be taken in the placement of driveways to ensure that sight lines are adequate in accordance with the Newtown Road Ordinance." (ROR, Item 36)
At the public hearing on April 20, 2000 several neighbors of the proposed subdivision spoke. Scott Baggatt's "major concern" was potential drainage, soil erosion and water problems on or near his property. He made brief reference to the possibility that "guard rails" on Hanover Road might impede sightlines from the driveways entering that road. (Tr.14-16.) David Barbour and Wendy Fuller also commented on water and drainage issues and Ms. Fuller expressed concern about traffic on nearby Schoolhouse Hill Road. (Tr. 16-19.) John Barnum noted that there was a CT Page 8969 ridge near proposed Lot 6 on Hanover Road, and there would be a blind spot at that driveway entrance. (Tr. 19.)
With this record review in mind the court examines the reasons provided by the Commission in the last section of its paragraph two. For the second time the Commission stated that there is no road work agreement. However, the resolution is bereft of any indication what the road work agreement would cover. Presumably, the second reference to a road work agreement refers to something other than the drainage project discussed above; otherwise it is surplusage. If the Commission had something else in mind however, it is not fathomable from the resolution or the record.
Similarly, the Commission's statement that the "full impact" the subdivision will have on Hanover Road and public safety has not been addressed fails to provide any clue as to what, if any, safety concern underlay the Commission's resolution. A similar situation was presented in RK Development Corp. v. Norwalk, 156 Conn. 369 (1968). There a subdivision application was denied on the following stated reason:
 "[t]he safety for the sake of the children as well as the people living up there, the welfare of the community and also the health hazards.
Id, 376. The Connecticut Supreme Court found this reason to be inadequate in that it was
 vague, uncertain in meaning and provided no information to the [applicant] to enable it to know wherein the plan submitted failed to satisfy the requirement of the regulations.
Id, 377. While the Commission in this case has made reference to certain regulations they do not provide the court, or the McLachlans, with any guidance.
The Commission's second paragraph cites two subdivision regulations: § 4.02.200, already discussed, and § 2.03 which states in pertinent part.
 The land to be subdivided shall be of such character that it can be used for building purpose without danger to public health, safety or welfare."
Section 2.03 apparently draws its language from Gen. Stat. § 8-25.[5]
Both parties agree, that standing alone, a regulation containing generalized policy statements pertaining to health and safety is not a CT Page 8970 sufficient basis for denying a subdivision application. Sowin Associatesv. Planning and Zoning Commission, 23 Conn. App. 370, 374, cert. denied,216 Conn. 832 (1990); see also Sonn v. Planning Commission, 172 Conn. 156
(1976); Keating v. Patterson, 132 Conn. 210 (1945).
In sum the court finds that paragraph two of the Commission resolution, considered by specific parts and in toto, does not set forth a reason supported by substantial evidence to support denial of the application. Furthermore, it does not identify a specific safety issue or demonstrate that the application is in violation of a specific regulation.
C. The Tree Ordinance. Paragraph three of the Commission resolution of disapproval focuses on a Borough of Newtown Ordinance which prohibits destruction or cutting of, and excavation close to, certain trees which partially or fully overhang or encroach upon a public right of way or place. The ordinance was included in the record as part of the Borough of Newtown zoning regulations. (ROR, Item 52.) The Commission incorrectly describes the ordinance as affecting all such trees when in fact it only applies to those with a trunk diameter of two feet or more (which are called "Public Trees"). According to the record and the court's site inspection there is only one such tree along the section of Hanover Road on which the proposed subdivision fronts, a large and well used, but ostensibly healthy, sugar maple. The Commission states that the applicant has not addressed this ordinance or shown "whether or not . . . the ordinance will create a risk for public safety." Although again not explained, the court presumes that the Commission is referring to whether any Public Tree would hinder sightlines from the proposed driveways entering Hanover Road. Contrary to the Commission's finding, the McLachlans did address this concern at the public hearing. At that time a representative of the McLachlans' engineering firm testified and provided field drawings and notes that the Newtown Road Ordinance requirement of a 150 foot line of sight from all driveways was complied with, and that the one Public Tree in the area did not impede those sightlines. (Tr. 9-11; ROR, Item 47.) There is no evidence in the record to contradict that testimony or exhibit. Therefore the court finds that paragraph three of the resolution is not supported by substantial evidence.
D. Other Safety Concerns. Perhaps in recognition that the resolution of disapproval was seriously deficient in this regard, counsel for the Commission at oral argument and in his brief made it clear that the underlying safety concerns of the Commission involved the intersections between the driveways of the lots fronting on Hanover Road and the road itself.
 The primary concerns of the Commission was that CT Page 8971 driveways for . . . [the] subdivision lots connected with Hanover Road at a point when the topography of the land created physical problems for driveway connections and there were problems in achieving 150 feet of site (sic) line distance in both distance . . .
Commission Memorandum, 8. This concern is not set forth in any fashion in the Commission's resolution of disapproval. Having found that the expressed reasons for disapproval are not supported by substantial evidence it might be considered "unfair and illogical" and a usurpation of the Commission's administrative functions for a court to search the entire record for reasons to support the Commission's actions. See Fuller, 9A Connecticut Practice Series: Land Use Law and Practice, (2d ed.) § 33.8, p. 175; see also, Kaufman v. Zoning Commission ofDanbury, 232 Conn. 122, 142 (1995) (where zoning commission has formally stated reasons for the its decision the court should not go behind this collective statement.) Nevertheless, where safety is concerned, it does not seem inappropriate to consider the issue as framed by counsel and as presented in the record. As reviewed above, there is some evidence in the record, albeit not referenced in the Commission's resolution, of concern about the driveway intersections. (See ROR Items 34, 36 and Tr. 19.) Indeed, counsel for the McLachlans mentioned the subject at the April 20, 2000 hearing. (Tr. 5.) Part of the concern was based on the condition of Hanover Road itself, and the rest on the fact that the land in the proposed subdivision drops off east of Hanover Road. It will require certain cuts and fills as well as positioning the driveways to follow the contour of the land to bring the driveways up to the level of the road. These topographical aspects and the location of the proposed driveways were clearly delineated on a map before the Commission. (ROR, Item 49.)
Despite the concerns expressed in the record there is no evidence therein that the proposed driveway intersections are in fact a safety problem or that they violate any of the rather comprehensive regulations governing the subject. As noted previously the McLachlans' engineer produced testimony and documentary evidence that the sightlines at all the driveway intersections met the 150 foot requirement established by Section 9.03 of the Newtown Road Ordinance. On the site visit the court discerned no reason for finding those calculations incorrect. Similarly, the subdivision regulations (ROR, Item 50, § 4.06.100) prescribe that a driveway entrance be relatively flat, not more than a five percent grade, for a distance of at least thirty five feet from the road center line and to have no grade greater than a fifteen percent. The record shows that these regulations have been complied with in the proposed subdivision. (Tr. 9; ROR, Item 49.)
 CONCLUSION
CT Page 8972
The court finds no substantial evidence to support the Commission's stated reasons for denial of the subdivision application. In addition, the court finds that, with respect to at least one unstated public safety concern, the application is in conformance with subdivision regulations. Therefore, the appeal is sustained, and the Commission is ordered to grant the application. The grant may be conditioned on the setting of an appropriate bond for the drainage work.
ADAMS, J.